Richard A. ANSON, and Union
Democracy Committee,
Plaintiffs,

v.

The NATIONAL MARITIME UNION OF
AMERICA, Shannon Wall, President of
the N.M.U., Thomas Martinez, National
Secretary Treasurer of the N.M.U., An-
drew Rich, New York Branch Agent of
the N.M.U., Defendants.

No. 84 Civ 5468 (LBS).

United States District Court,
S.D. New York.

Oct. 10, 1984.

Richard A. Anson and Union Democracy Committee, pro se.

Phillips & Cappiello, P.C., New York City, for defendants; Ned R. Phillips, New York City, of counsel.

## OPINION

SAND, District Judge.

Plaintiffs, a member of the National Maritime Union (hereinafter "Union") and a committee comprised of candidates for union office, have filed a complaint seeking an order (1) preventing incumbent Union officers from enacting and enforcing amendments to the Union constitution and (2) enjoining the convening of the 1984 Union convention, scheduled to take place on October 1, 1984.[1] Defendants, the Union and several incumbent Union officers, have moved to dismiss the complaint pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.[2] For the reasons discussed below, defendants' motion to dismiss is granted.

■ The resolution of this motion is inextricably linked to the present procedural and temporal posture of plaintiffs' claims. With respect to plaintiffs' first request for relief, plaintiffs appear to predicate their request on alleged improprieties occuring during the 1983 election of defendant Union officers. *See* Complaint, p. 2, ¶ 2, p. 3, ¶ 2;[3] *see also* Defendants' Memorandum of Law in Support of Motion to Dismiss Complaint, etc., at 3 (hereinafter "Defendants' Memorandum of Law"). Both plaintiffs and defendants acknowledge that the United States Department of Labor (hereinafter "the DOL") is currently investigating charges that the 1983 election of Union officers was conducted in violation of Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter "the LMRDA"), 29 U.S.C. § 481 *et seq.* (1982). *See* Complaint, p. 2; ¶ 2, Defendants' Memorandum of Law, at 3.[4] In this connection, we note that Title IV of the LMRDA affords a presumption of validity to challenged elections of union officers. *See* 29 U.S.C. § 482(a) (1982).[5] In addition,

1. Jurisdiction is alleged to be based on Title I of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411 *et seq.* (1982).

2. Defendants have also moved in the alternative for an order pursuant to Rule 12(f) of the Federal Rules of Civil Procedure striking plaintiffs' demand for a jury trial. In view of our disposition of defendants' motion to dismiss, we need not decide the aforementioned alternative motion.

3. Plaintiffs request that a provision of the Union constitution governing the seating of, and voting by, Union officers as delegates at the Union convention "be suspended as all incumbent officials are in a non-legal elected positions as officers within" the Union. Complaint, p. 3, ¶ 2. Since plaintiffs' complaint was filed on August 1, 1984, prior to the 1984 Convention and election of Union officers, plaintiffs' reference to "non-legal" elected officials presumably relates to the alleged labor law violations occurring during the 1983 elections of those officers.

4. This investigation is expected to be completed and a decision rendered by October 15, 1984. *See* Letter of George L. Nash, Area Administrator, New York Area Office, Labor-Management Services Administration, United States Department of Labor (September 21, 1984), submitted in support of Plaintiffs' Affidavit in Opposition to Defendants' Motion.

5. This section provides:
   (a) A member of a labor organization—
   (1) who has exhausted the remedies under the constitution and bylaws of such organization and of any parent body, or
   (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation, may file a complaint with the Secretary within one calendar month thereafter alleging the

Title IV permits federal courts to entertain challenges to previously-conducted union elections only after the administrative process has been completed and only if the Secretary of Labor chooses to pursue the union member's complaint by filing a civil action in federal court. *See* 29 U.S.C. § 482(b) (1982).[6] Thus, to the extent that plaintiffs' claim is based on the alleged 1983 Union election violations currently under investigation by the DOL, this Court is without jurisdiction either to determine the validity of these allegations or to grant the relief requested by plaintiffs.

With respect to plaintiffs' second request for relief, this Court is similarly without jurisdiction to entertain this portion of plaintiffs' claim. Initially, we note that plaintiffs can no longer obtain the particular relief sought in their complaint.

Plaintiffs filed the instant complaint on August 1, 1984. However, plaintiffs have since failed to properly pursue any application for preliminary relief or expedited consideration of their claim.[7] At the present time, the Union's convention has already commenced and has presumably concluded.[8] Thus, even if plaintiffs' claims are properly before this Court and are found to be meritorious, this Court is no longer in a position to grant the relief which plaintiffs seek, namely, the enjoining of the 1984 Union convention.[9]

Regardless of the relief requested by plaintiffs, however, this Court must still address the question of whether plaintiffs' complaint states a claim over which this Court has jurisdiction. Plaintiffs' complaint, liberally construed, can be interpret-

---

violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide.
29 U.S.C. § 482(a) (1982).

**6.** This section provides in pertinent part:
(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied, he shall, within sixty days after the filing of such complaint, bring a civil action against the labor organization as an entity in the district court of the United States in which such labor organization maintains its principal office to set aside the invalid election, if any, and to direct the conduct of an election or hearing and vote upon the removal of officers under the supervision of the Secretary and in accordance with the provisions of this subchapter and such rules and regulations as the Secretary may prescribe.
29 U.S.C. § 482(b) (1982).

**7.** Although plaintiffs, *pro se* litigants, referred in their complaint to the fact that it was "necessary to proceed by showing cause that the convening of the October, 1984 NMU Convention should not be allowed," Complaint, p. 1, ¶ 3, no order to show cause or similar application for preliminary relief was ever submitted by plaintiffs. This Court's *pro se* office was notified by cham-

bers that plaintiffs should be instructed as to the proper procedures to follow regarding the pursuit of such relief. The *pro se* office sent the plaintiffs pertinent instructions. Plaintiffs have apparently been in contact with the *pro se* office since that time. *See* Plaintiffs' Request to extend time to answer National Maritime Union Motion to Dismiss (September 6, 1984). The only paper which this Court has since received from plaintiffs, however, is plaintiffs' Affidavit in Opposition to Defendants' Motion (September 25, 1984).

**8.** Even assuming the Union convention is still in session and that the election process is still taking place, *see* fn. 10 *infra*, it would be inappropriate for this Court to grant the extraordinary and intrusive relief requested by plaintiffs. *See Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* — U.S. ——, 104 S.Ct. at 2557, 81 L.Ed.2d 457 (1984) (federal district court order enjoining ongoing union election balloting process pursuant to Title I of the LMRDA (29 U.S.C. § 412) is inappropriate; exclusive remedy is post-election suit by Secretary of Labor under Title IV), *id.* at ——, 104 S.Ct. at 2568–69 (appropriate judicial relief during union election process does not include measures which would substantially delay or invalidate an ongoing election).

**9.** Even if plaintiffs had properly moved for preliminary relief prior to the commencement of the 1984 Union convention, plaintiffs still would have faced substantial impediments to the granting of the requested relief. *See Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964).

ed as advancing two bases for challenging various acts which occurred prior to the 1984 Union convention and election of Union officers.[10] Briefly stated, plaintiffs appear to allege that (1) defendants have "denied unreasonably" the opportunity to nominate delegates to the 1984 convention by making applications for such positions available at a limited place and time,[11] and have engaged in ballot tampering in connection with this nominating process;[12] and (2) Union funds have been improperly used to promote the candidacy of defendants, *i.e.*, incumbent Union officers seeking re-election.[13] Plaintiffs contend that these acts constitute violations of Title I of the LMRDA; specifically, plaintiffs allege that the first claim falls within § 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1) (1982), which guarantees union members "equal rights and privileges ... to nominate candidates ... subject to reasonable rules and regulations in such organization's constitution and by-laws," and that the second claim falls within § 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) (1982), which guarantees union members "the right to meet and assemble freely with other members ... and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization ... subject to the organization's established and reasonable rules pertaining to the conduct of the meetings ...." *See* Complaint, p. 1, ¶ 4, p. 2, ¶ 3.

Although plaintiffs frame these claims as arising under Title I of the LMRDA, these claims are, in substance, violations of Title IV of the LMRDA as well. Plaintiffs' claims regarding the nomination process appear to fall within 29 U.S.C. § 481(e) and (f) (1982), which govern the nomination of candidates and election of union officers by a convention of delegates.[14] Defendants' alleged improper use of Union funds falls within 29 U.S.C. § 481(g) (1982), which prohibits the use of union funds to promote candidates for union office. Plaintiffs' assertion regarding access to Union publications, to the extent this constitutes a claim of wrongdoing by defendants and not merely a form of requested relief, is governed by 29 U.S.C. § 481(c) (1982). *See New Watch-Dog Committee v. New York City Taxi Drivers Union*, 438 F.Supp. 1242, 1245–46 (S.D.N.Y.1977) (§ 481(c) includes right to nondiscriminatory coverage in and utilization of union publications), and cases cited therein.

The troubling conflict presented by plaintiffs' claims is thus apparent: while Title I provides various rights and protec-

---

**10.** Although plaintiffs never clearly explain when the 1984 election of Union officers was to occur, it appears that the Union election process spans a several-month period, culminating in the election of Union officers at a convention of delegates chosen by secret ballot. *See Wier v. Wall*, 83 Civ. 4368 (RWS), slip op. at 3 (S.D.N.Y. 1983) (describing National Maritime Union election process); 29 U.S.C. § 481(a) (1982) ("Every national or international labor organization ... shall elect its officers not less than once every five years either by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot.").

**11.** Plaintiffs appear to allege that the time restrictions propounded by defendant Rich, the New York Branch Agent of the Union, are inconsistent with the Union constitution. *See* Complaint, pp. 1–2, ¶ 6.

**12.** In connection with this allegation, plaintiffs refer to the present DOL investigation of alleged labor law violations surrounding the 1983 election of Union officers. *See* Complaint, p. 2, ¶ 2.

We assume, however, that plaintiffs are also alleging additional instances of ballot tampering with respect to the 1984 nomination of convention delegates.

**13.** Plaintiffs claim that regional conferences held prior to the 1984 Convention were used by defendants as an opportunity to engage in "pre-election campaign[ing]." Complaint, p. 2, ¶¶ 4–5. The costs associated with these conferences were allegedly borne by the Union. *See id.*

In their request for relief for the above conduct, plaintiffs seek an equal opportunity to reach Union members, including "equal access to the Union Publications." Complaint, p. 2, ¶ 5.

**14.** Indeed, absent any allegation that defendants' rules regarding the nomination of convention delegates were discriminatorily applied, plaintiffs' claim does not even fall within the ambit of Title I's equal rights provision. *See Calhoon v. Harvey*, 379 U.S. 134, 138–39, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964).

tions for members involved in union elections, with enforcement and appropriate remedies available in federal court, Title IV also regulates the conduct of elections for union officers and provides an elaborate post-election procedure for enforcement of its standards by the Secretary of Labor. *See Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* — U.S. —, —, 104 S.Ct. 2557, 2560, 81 L.Ed.2d 457 (1984). Fortunately, the Supreme Court has recently reaffirmed the proper resolution of this conflict: where an individual union member challenges the validity of an election that has already been completed, the exclusive remedy for the alleged labor law violations lies in the administrative enforcement procedures provided by Title IV. *See Crowley, supra,* — U.S. at —, 104 S.Ct. at 2564–66; 29 U.S.C. § 483 (1982) ("The remedy provided by [Title IV] for challenging an election already conducted shall be exclusive."). All of plaintiffs' claims effectively constitute challenges to various incidents occurring as part of the Union's nomination and election process; the nature of these claims, as well as the relief which plaintiffs request, make clear that plaintiffs challenge the validity of the 1984 election itself. *See* Complaint, p. 3, ¶ 3 (requesting "that the National Convention be suspended until after the new 1984 National Maritime Union Election").[15] In these circumstances, *Crowley* makes clear that this Court lacks jurisdiction over plaintiffs' claims. If plaintiffs wish to pursue their claims, the appropriate course of action is to file a complaint with the Secretary of Labor in accordance with the procedures provided under Title IV. *See Crowley, supra,* — U.S. at —, — n. 23, 104 S.Ct. at 2567, 2571 n. 23.

Accordingly, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is granted.

SO ORDERED.

---

**15.** Plaintiffs' claims thus do not fall within that class of Title I cases which do not involve challenges to previously conducted union elections and thus are not barred by the exclusivity provision of Title IV. *Cf. Ross v. International Brotherhood of Electrical Workers,* 513 F.2d 840 (9th Cir.1975) (common law tort claim arising out of election-related conduct of union officer not barred by Title IV); *Amalgamated Clothing*

*Workers of America Rank and File Committee v. Amalgamated Clothing Workers,* 473 F.2d 1303 (3rd Cir.1973) (suit seeking declaration that union's election bylaws violated LMRDA not barred by Title IV where no relief relating to already-completed union election was sought), cited in *Crowley, supra,* — U.S. at — n. 16, 104 S.Ct. at 2566 n. 16.