**Gilberto Alicea ROBLES, as a member of the International Longshormen Association (ILA), Local 1575 AFL–CIO with a retired member status, Plaintiff,**

v.

**INTERNATIONAL LONGSHOREMEN ASSOCIATION AFL–CIO (ILA), and John Baker, as trustee appointed by the ILA International over the Local Union 1575, Defendants.**

Civil No. 05–1555 (GAG).

United States District Court, D. Puerto Rico.

Dec. 15, 2006.

Luis A. Guzman–Dupont, Luis A. Guzman Dupont Law Office, San Juan, PR, for Plaintiff.

Luis N. Blanco–Matos, Gleason, Marrinan & Mazzola Mardon PC, New York, NY, for Defendants.

## OPINION & ORDER

GELPI, District Judge.

The plaintiff commenced this action alleging a violation of Title I of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411–531. Presently before the court is the defendants' motion for summary judgment (Docket No. 27), the plaintiff's opposition thereto (Docket No. 40), the defendants' subsequent reply (Docket No. 45), and the plaintiff's surreply (Docket No. 48). After reviewing the relevant facts and applicable law, the court **GRANTS** the defendants' motion for summary judgment and **DISMISSES** the complaint.

### I. Factual Background & Procedural History

The parties' statements of facts, credited only to the extent either admitted or properly supported by record citations in accordance with Local Rule 56 and viewed in the light most favorable to the plaintiff, reveal the following undisputed material facts:

The plaintiff in this case is a retired member of Local 1575 of the International Longshoremen Association AFL–CIO ("ILA"). *See* Docket No. 30–1, ¶ 3. Local 1575 has approximately 1,400 members: 750 active members and 650 retired members or pensioners. *See* Docket No. 17, ¶ 23. On August 21, 2003, the ILA appointed defendant John D. Baker ("Baker") as trustee over Local 1575's affairs. *See* Docket No. 30–1, ¶ 4. On December 8, 2004, Baker notified union members that a special assembly would be held during which Local 1575's bylaws would be reviewed. *Id.* at ¶ 7. At the special assem-

bly, Baker amended Local 1575's bylaws. *Id.* Post-amendment, the bylaws prohibited retired members from voting for the local president. *See id.* at ¶ 8. On December 28, 2004, the plaintiff and 26 other retired members transmitted a letter to Baker and the Local 1575 Secretary challenging the amendment procedure because the local never held a second assembly to ratify the amendments. *See* Docket No. 40–2, ¶ 5 & Exh. IX.

Local 1575 conducted a union officer election on June 8, 2005. *See* Docket No. 30–1, ¶¶ 12–13. Pursuant to the amended bylaws, the plaintiff and other retired members did not vote for the local president. *See* Docket No. 17, ¶ 19. The newly elected officers were sworn in on June 20, 2005. *See* Docket No. 30–1, ¶¶ 12–13. Three members of Local 1575 filed a protest of the officer election in which they also challenged the bylaw amendment procedure. In a decision dated August 8, 2005, the ILA rejected the protest. *See* Docket No. 40–1, Exh. XI. The record contains no evidence that the plaintiff or any union member filed a formal complaint with the Secretary of Labor.

On May 26, 2005, the plaintiff filed his Complaint and Request for Preliminary Injunction in which he asked the Court to prohibit Local 1575 from enforcing the amended bylaws and to require the local to conduct the June 8, 2005 election under the pre-amendment bylaws. *See* Docket No. 1. The court refused to issue the preliminary injunction. On May 31, 2005, the plaintiff filed his Motion a Temporary Restraining Order which the court also denied. *See* Docket Nos. 4–5.

Following the conduct of the June 8, 2005 election, the plaintiff filed his Amended Complaint. *See* Docket No. 17. In his Amended Complaint, the plaintiff alleges that the defendants violated Title I of the LMRDA by adopting and enforcing a by-

law that denied pensioners' right to vote in union officer elections. *See id.* at ¶¶ 20, 22, 33–35. The defendants moved for summary judgment asserting that the court lacks subject matter jurisdiction to entertain the plaintiff's purported Title I suit. *See* Docket No. 27.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to defeat summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The court must view the record in the light most favorable to the party opposing summary judgment and draw all reasonable inferences in the nonmovant's favor. *See id.* The court must deny the summary judgment motion if it finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. Discussion

The plaintiff alleges that the defendants violated Title I of the LMRDA by imposing restrictions upon retired members' right to vote in union officer elections. *See* Docket No. 17, ¶¶ 20–22, 33–35. Consequently, the plaintiff asks the court to annul Local 1575's amended bylaws, to annul the June 8, 2005 election, and to order a new election. *See id.* at ¶ 36;

Docket No. 40–1, p. 3.[1] In their motion for summary judgment, the defendants do not directly challenge the substance of the plaintiff's Title I claim. Rather, they assert that the court lacks subject matter jurisdiction over the plaintiff's claim because the exclusivity provision of Title IV of the LMRDA bars the plaintiff's claim for relief under Title I. In response, the plaintiff argues that he states a valid cause of action under Title I that is not preempted by Title IV.

◼ The LMRDA protects the equal rights of union members to participate in internal union affairs. Title I sets forth a "Bill of Rights" for union members which protects them against the discriminatory application of union rules. *See Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 548, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984). The "Bill of Rights" specifically guarantees equal rights and privileges to nominate and vote for candidates, among other rights. 29 U.S.C. § 411(a)(1); *see also Crowley*, 467 U.S. at 536–37, 104 S.Ct. 2557; *Molina v. Union De Trabajadores De Muelles*, 762 F.2d 166, 167 (1st Cir.1985); *Local 1575, ILA v. Reich*, 951 F.Supp. 329, 331 (D.P.R.1996). An aggrieved union member may enforce Title I by filing a private action in federal court. 29 U.S.C. § 412; *see also Crowley*, 467 U.S. at 537, 104 S.Ct. 2557; *Molina*, 762 F.2d at 167; *Local 1575*, 951 F.Supp. at 331. The LMRDA, however, specifically limits the relief the federal court may grant to that which "may be appropriate." 29 U.S.C. § 412; *Crowley*, 467 U.S. at 538, 104 S.Ct. 2557.

◼ Conversely, Title IV governs union officer elections. *See* 29 U.S.C. §§ 481–483. It sets out a detailed procedure for post-election challenges. Congress designed the procedure to protect union democracy through free and democratic elections. *See Crowley*, 467 U.S. at 528, 104 S.Ct. 2557; *Molina*, 762 F.2d at 167; *Local 1575*, 951 F.Supp. at 331. The statutory scheme established in Title IV attempts, in part, "to guarantee fair union elections in which all members are allowed to participate." *Calhoon v. Harvey*, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). Unlike Title I, Title IV does not provide for a private right of action by aggrieved union members. Only the Secretary of Labor may file a Title IV action in federal court. An aggrieved union member must exhaust internal union remedies and then file a complaint with the Secretary before the Secretary may file an action in federal court. The LMRDA grants the Secretary the discretion to file a cause of action in federal court if she finds probable cause to believe an LMRDA violation occurred. *See* 29 U.S.C. § 482; *see also Molina*, 762 F.2d at 167–68 (discussing Title IV enforcement mechanism); *Local 1575*, 951 F.Supp. at 331–32 (describing procedural requirements placed on union member alleging Title IV violation). Moreover, Section 403 of the LMRDA explicitly establishes that Title IV provides the *exclusive* means through which a union member may challenge an already completed election.[2] 29 U.S.C. § 483; *see also Molina*, 762 F.2d at 167–68; *Local 1575*, 951 F.Supp. at 332. In most instances, Title IV precludes Title I relief when a union member challenges the validity of an

---

1. The plaintiff does not seek damages from the defendants.

2. Congress included the exclusivity feature of Title IV out of recognition for the Secretary's expertise, to protect union independence from judicial interference, to ensure expeditious and efficient resolution of election protests, and to consolidate election challenges into a single proceeding. *Crowley*, 467 U.S. at 539, 543–46, 104 S.Ct. 2557.

election that has already taken place. Pursuant to Title IV's exclusivity provision, Title I cannot support a union member's claim that necessarily will invalidate a previously conducted election. *Crowley,* 467 U.S. at 541–42, 104 S.Ct. 2557; *Molina,* 762 F.2d at 168.

■ In some circumstances, the rights protected by Title I and Title IV overlap. *See Crowley,* 467 U.S. at 538–39, 104 S.Ct. 2557 (recognizing Title I and Title IV protect many of the same rights); *Molina,* 762 F.2d at 167 (acknowledging coincidence of Title I and Title IV rights); *Knisley v. Teamsters Local 654,* 844 F.2d 387, 390–91 (6th Cir.1988) (acknowledging overlap but concluding election for "business agent" implicates only Title I rights and not Title IV rights). For example, both titles address the right to nominate candidates and to vote in union officer elections-precisely the rights the plaintiff in this case asserts the defendants violated. *Compare* 29 U.S.C. § 411(a)(1) (Title I equal rights provision), *with* 29 U.S.C. § 481(e) (Title IV union officer election challenge procedures provision). When, as here, such an overlap occurs, the court must consider Title IV's exclusivity provision. *See Crowley,* 467 U.S. at 538–39, 104 S.Ct. 2557. A union member may pursue a Title I claim, notwithstanding Title IV overlap and Title IV's exclusivity provision, only if the union member seeks "appropriate relief." *Id.* at 541 n. 16, 104 S.Ct. 2557. No relief that necessarily invalidates a union officer election qualifies as appropriate. *See id.; Molina,* 762 F.2d at 168 n. 6 (refusing to consider damages claim because consideration of claim would require court to address validity of officer elections); *Davis v. UAW,* 390 F.3d 908, 911–12 (6th Cir.2004) (noting rescission of

amendment restructuring union regions would invalidate elections conducted after amendment); *Berg v. Strickland,* 229 F.Supp.2d 875, 880 (N.D.Ill.2002) (striking all prayers for relief seeking invalidation of election, including accounting of election and declarations of violation of LMRDA); *Russo v. Ottley,* No. 83–2863, 1983 WL 2067, *1–3 (S.D.N.Y. June 5, 1983) (dismissing plaintiff's post-election challenge to validity of bylaw amendments because claim implicated Title IV rights).

■ In this case, the court lacks subject matter jurisdiction to grant the relief requested by the plaintiff. A review of the plaintiff's Amended Complaint reveals that he clearly seeks to affect the results of the June 8, 2005 election. He directly requests that the court annul the union officer election. In addition, he requests that the court rescind the amended bylaw and order a new election. Such remedies would have the same practical effect as explicitly annulling the June 8, 2005 officer election.[3] Title IV clearly prohibits such a result in any case not brought by the Secretary of Labor. Because the relief sought by the plaintiff necessarily will invalidate the election, the court lacks subject matter jurisdiction over his Title I claim.

In his summary judgment opposition, the plaintiff urges the court to focus its attention only on the procedure Baker followed to amend Local 1575's bylaws. The plaintiff's attempt to direct the court's attention away from the relief he seeks, however, does not save his claim. Although the LMRDA grants aggrieved unions members and the Secretary of Labor access to federal courts, the statute includes significant limitations on the court's power

---

**3.** The plaintiff acknowledges as much in the Proposed Pretrial Order. He states, "[t]he amendments must be annulled as well as the election of the president of Local 1575 since those elections were conducted under an illegal by-laws." Docket No. 42, p. 9.

to grant relief that affects the internal operations of labor unions; particularly strict limitations apply to actions affecting union officer elections. *See Crowley,* 467 U.S. at 539, 104 S.Ct. 2557 (noting importance of minimal judicial interference in internal union affairs); *id.* at 543–46 (discussing congressional intent behind Title IV exclusivity provisions). In order to assess subject matter jurisdiction, the court must consider whether it has the power to grant the relief sought. Title IV bars Title I relief, regardless of the merits of the underlying Title I claim, when an individual union member challenges the validity of an already completed officer election. *Crowley,* 467 U.S. at 541–42, 104 S.Ct. 2557; *Molina,* 762 F.2d at 168. The plaintiff clearly brings such a challenge in his Amended Complaint. The court, therefore, lacks subject matter jurisdiction to grant the requested relief. Accordingly, the court **GRANTS** the defendants' motion for summary judgment and **DISMISSES** the plaintiff's claim for lack of subject matter jurisdiction.

■ Furthermore, the court notes that the plaintiff does not allege any facts to show that the defendants discriminated against him in violation of Title I during the bylaw amendment process. Title I is an anti-discrimination provision; it protects each union member's *equal* right to participate in union affairs. 29 U.S.C. § 411(a)(1); *see also Calhoon,* 379 U.S. at 139, 85 S.Ct. 292 (acknowledging Title I equal rights provision "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote"); *Molina,* 762 F.2d at 168–69 (noting proper Title I discrimination complaint alleges unequal treatment); *Ackley v. W. Conference of Teamsters,* 958 F.2d 1463,

1473–74 (9th Cir.1992) (strictly interpreting Title I discrimination requirement). *But see Christopher v. Safeway Stores, Inc.,* 644 F.2d 467, 470–71 (5th Cir.1981) (concluding union's withholding of all members' opportunity to vote on mandatory matter violated Title I). Title I of the LMRDA does not grant the court an unrestricted license to interfere in the internal affairs of a union. *See Howard v. United Ass'n of Journeymen & Apprentices, Local 131,* 560 F.2d 17, 21 (1st Cir.1977). Thus, absent an allegation of discrimination, Title I does not provided a basis on which the court may delve into whether a union lawfully adopted, amended, or repealed its bylaws.

Here, the plaintiff has not articulated how the procedure followed deprived him of his equal rights. The plaintiff alleges that Baker, in violation of Local 1575's bylaws, held a second assembly to ratify the amendments. In a conclusory fashion, the plaintiff's summary judgment opposition asserts that "the procedural changes made by the defendants must be viewed as discriminatory." Docket No. 40–1, p. 12. He does not, however, offer any factual allegations to support a finding of discrimination in the amendment procedure. Neither his complaint nor his statement of facts alleges facts illustrating that the defendants denied him a right granted to others. Viewing in isolation the plaintiff's allegations regarding the amendment process, the court lacks subject matter jurisdiction under the LMRDA because the plaintiff has not asserted a proper Title I claim. The defendants' alleged failure to follow the procedure established in its bylaws, absent discrimination, is not actionable under Title I.[4]

---

4. The court makes no conclusion whether the defendants' alleged failure to follow the proper amendment procedure may be actionable under another law.

## IV. Conclusion

In light of the foregoing discussion, the court hereby **GRANTS** the defendants' motion for summary judgment (Docket No. 27) and **DISMISSES** the plaintiff's complaint. Judgment will be entered accordingly.

**SO ORDERED.**